

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LUCIOUS GORDON #131312** | **CIVIL ACTION** |
| **versus** | **NO. 04-1058** |
| **BURL CAIN, WARDEN** | **SECTION: "B" (1)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2).[1] Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination. According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).



Petitioner, Lucious Gordon, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On April 8, 1998, he was convicted of possession of heroin in violation of La.Rev.Stat.Ann. § 40:966.[2]  On October 1, 1998, he was found to be a third offender and was sentenced as such to a term of life imprisonment, without benefit of probation or suspension of sentence, with credit for time served.[3]  Petitioner's conviction and sentence were affirmed by the Louisiana Fourth Circuit Court of Appeal on December 27, 2000.[4]  He then filed with the Louisiana Supreme Court an application for a writ of certiorari and/or review[5] which was denied on January 4, 2002.[6]

On or about September 12, 2002, petitioner filed with the state district court an application for post-conviction relief.[7]  That application was denied on November 6, 2002.[8]  Petitioner then filed with the Louisiana Fourth Circuit Court of Appeal an application for a supervisory writ of review[9]

---

[2]  State Rec., Vol. I of IV, minute entry dated April 8, 1998; State Rec., Vol. II of IV, jury verdict form.

[3]  State Rec., Vol. II of IV, transcript of October 1, 1998, p. 4; State Rec., Vol. I of IV, minute entry dated October 1, 1998.

[4]  State v. Gordon, No. 99-KA-0303 (La. App. 4th Cir. Dec. 27, 2000) (unpublished); State Rec., Vol. I of IV.

[5]  State Rec., Vol. IV of IV.

[6]  State v. Gordon, 805 So.2d 1193 (La. 2002) (No. 2001-KO-0443); State Rec., Vol. III of IV.

[7]  State Rec., Vol. I of IV.  The filing stamp is illegible; however, the application was signed on September 12, 2002.

[8]  State Rec., Vol. IV of IV, Judgment dated November 6, 2002.

[9]  State Rec., Vol. IV of IV.

which was denied on January 23, 2003.[10]  He next filed with the Louisiana Supreme Court an application for a supervisory writ of certiorari[11] which was denied on February 20, 2004.[12]

On March 17, 2004, petitioner filed this application for federal *habeas corpus* relief.[13]  In support of his application, he claims:

1.     The prosecution illegally used peremptory challenges to exclude petit jurors on the basis of race;

2.     Evidence was improperly admitted at trial;

3.     Petitioner received ineffective assistance of counsel; and

4.     Petitioner was wrongly adjudicated a third offender.[14]

The state concedes that petitioner exhausted his remedies in state court.[15]  The state does not

---

[10]   State v. Gordon, No. 2002-K-2501 (La. App. 4th Cir. Jan. 23, 2003) (unpublished); State Rec., Vol. I of IV.

[11]   State Rec., Vol. II of II.

[12]   State *ex rel.* Gordon v. State, 866 So.2d 820 (La. 2004) (No. 2003-KH-0663); State Rec., Vol. I of IV.

[13]   Rec. Doc. 1.

[14]   In his federal application, petitioner states that the Court should refer to a "memorandum in support" for an elaboration of his claims.  However, no such supporting memorandum was attached to his application.  Out of an abundance of caution, the Court has referred to petitioner's state applications, which were attached to his federal application, to get a better understanding of his claims.
    The Court further notes that the state's response addresses the state court's denial of a motion to suppress.  However, no claim related to that denial is listed on petitioner's federal application, and no such claim is before this Court.

[15]   Rec. Doc. 6, p. 3.

argue that petitioner's federal application is untimely, and the record reflects that the application is in fact timely filed. Accordingly, petitioner's claims will be considered on the merits.

Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

Facts

On direct appeal, the Louisiana Fourth Circuit Court of Appeal concisely summarized the facts of this case as follows:

> On the afternoon of August 7, 1997, police officers involved in an undercover operation with the A.T.F. drove into the St. Thomas Housing Project. As they neared the St. Mary/St. Thomas courtyard, they saw the defendant Lucious Gordon standing in the area and holding an umbrella. As three officers got out of their car, Gordon closed his umbrella. One of the officers tried to ask Gordon a question, and Gordon ran behind a building. While one officer gave chase, two others cut to the other side of the building and saw Gordon as he emerged from that side of the building. Gordon dodged past them and continued running. Another officer, who was in a marked car, saw Gordon reach into his pocket and pull out a white object. One officer testified that as he was chasing Gordon, two females standing nearby commented upon the fact that Gordon was running with the "stuff" in his hand.
>
> Gordon slipped in the grass, and one of the officers saw a white object fall from his hand. Gordon got up and ran across St. Thomas Street, and then doubled back and collided with a third police car, which had just driven onto the scene. Various officers apprehended him and found a white plastic Sucrets box on the ground next to him. The box had been opened, and spilling out of it were several small packets of folded waxed paper. Inside these packets were small amounts of white powder. The officers arrested Gordon, searched him, and found packets of crack cocaine on his person. They also seized $120.
>
> The officers placed Gordon in the back of one of the police cars, and one of the officers began giving him basic first aid. The officer asked Gordon why he ran, and Gordon replied that he ran because he had "it"on him. Another officer searched the area where he had seen Gordon slip in the grass, and he recovered the white object, which appeared to have been a piece of the white Sucrets box which Gordon dropped after colliding with the police car. An ambulance eventually arrived and transported Gordon to the hospital, where doctors discovered a bag of marijuana tucked inside Gordon's sock. Gordon was treated and released to the officers.

The substances found in the waxed paper packets tested positive for heroin. The objects seized from Gordon at the time of the arrest tested positive for cocaine. The material inside the bag found inside Gordon's sock at the hospital tested positive for marijuana.

The defense presented the testimony of two women who lived in the area. One woman testified Gordon had left her residence only a few minutes prior to her hearing tires screeching. She looked out her window and saw Gordon pinned between a police car and the wall of a building. She insisted Gordon did not try to get up and run after being hit by the car, and she stated the officers searched for forty-five minutes before finding anything. The other woman, who lived across the street, testified that she heard tires screeching, looked out her window, and saw the impact. She testified Gordon was not pinned between the police car and the building, but she stated Gordon did not try to get up after being hit. She also testified that she did not see Gordon throw down any object.[16]

## Batson Claim

Petitioner's first claim is that the trial court erred in not finding a pattern of purposeful discrimination in the prosecutor's use of peremptory challenges to exclude jurors on the basis of race. Claims of racial discrimination in jury selection must be analyzed pursuant to the three-step procedure established by the United States Supreme Court in Batson v. Kentucky, 476 U.S. 79 (1986). The first step of the Batson analysis requires that the defendant make a prima facie showing that the prosecution has exercised peremptory challenges on the basis of race. If that requisite showing is made, the trial court proceeds to the second step, wherein the burden shifts to the prosecution to provide a race-neutral explanation for striking the venire member in question. If a race-neutral explanation is tendered, the trial court proceeds to the third step where the burden again shifts to the defendant to prove purposeful discrimination. It must be remembered that the ultimate

---

[16] State v. Gordon, No. 2002-K-2501, at pp. 1-3 (La. App. 4th Cir. Jan. 23, 2003) (unpublished); State Rec., Vol. I of IV.

burden of persuasion regarding racial motivation rests with, and never shifts from, the defendant.

Purkett v. Elem, 514 U.S. 765, 767 (1995); Ladd v. Cockrell, 311 F.3d 349, 355-56 (5th Cir. 2002);

see also Miller-El v. Dretke, 361 F.3d 849, 853 (5th Cir.), cert. granted, 124 S.Ct. 2908 (2004).

The United States Fifth Circuit Court of Appeals has noted:

> Where ... the State tendered a race-neutral explanation, the question of the defendant's prima facie case is moot, and our review begins at step two. The State's proffered race-neutral explanation is a legal issue. At this second step, we do not demand an explanation that is persuasive, or even plausible. The issue is whether the explanation is facially valid: Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral. In other words, a neutral explanation is based on something other than race.
>
> ....
>
> At step three, the decisive question is normally whether a proffered race-neutral explanation can be believed. This ultimate conclusion of discriminatory intent is a finding of fact. The burden of persuasion continues to lie with the party making the claim of purposeful discrimination. We would tend to reverse if the State's reasons were fantastic or inconsistent with its treatment of similar non-minority jurors. Where its reasons are believable, however, the inquiry is one of credibility. Obviously, this question of fact turns heavily on demeanor and other issues not discernable from a cold record, such that deference to the trial court is highly warranted ....
>
> Under AEDPA, ... we presume the state court's factual findings are correct unless they would result in a decision that is unreasonable in light of the evidence presented; the unreasonableness, if any, must be established by clear and convincing evidence.

Ladd v. Cockrell, 311 F.3d 349, 355-56 (5th Cir. 2002) (citations, quotation marks, and textual

alterations omitted).

The transcript reflects the following pertinent exchanges regarding the use of the state's

peremptory challenges:

> BY THE COURT:
> Let the record reflect that in chambers the defense counsel has asked that he be allowed to go on the record as the State has exercised two peremptory challenges

during this second round of Ms. Jean Kirk and Janice Dupre, and the defense has asked at this time that the State be required to explain the nature of these two challenges under <u>Batson versus Kentucky.</u>  Your response first as to Ms. Kirk.

MR. STAPERT [defense counsel]:
I don't mean to interrupt.  This would go towards not only those two.  [T]he State has used all of its ten strikes against African Americans.  We feel because of that there is a prima facia [sic] case of racial discrimination not simply towards those two strikes but at this point it's ten out of 12 that the State has used against African Americans.

BY THE COURT:
The State has used a total of ten and all ten you allege are African Americans.  Does the State question that?

MR. HOTH [the prosecutor]:
No.

BY THE COURT:
Of the six that have been selected how many are black.

MR. HOTH:
One, Your Honor, that I have accepted.

BY THE COURT:
The defense has used five peremptory challenges.  Of those five were any black citizens?

MR. STAPERT:
Yes.  I believe there were.  Let me check for one moment.

MR. HOTH:
I have also accepted.

BY THE COURT:
Wait.  Let me do this.  It keeps it in perspective for me, if you don't mind.

MR. STAPERT:
Mr. Smith, Mr. Bruce Smith.

BY THE COURT:
Is a black citizen and you excused him but the State accepted him.

MR. STAPERT:
That's correct.

BY THE COURT:
And the other four you have used have been against white citizens?

MR. STAPERT:
Yes, Your Honor.

BY THE COURT:
Can the State explain then it's challenge first of Nadine Collins?  You wish me to go back and have the State explain each of the ten?

MR. STAPERT:
Yes.

MR. HOTH:
Ms. Collins.  I had her on a prior jury panel and Ms. Collins stated that she's seen police officers put drugs on people before.

BY THE COURT:
As to Mr. Turner?

MR. HOTH:
Mr. Turner made some comment about residue.

BY THE COURT:
As to Ms. Washington?

MR. HOTH:
Ms. Washington has also made comments I believe in another case concerning drugs being pinned on defendants.

BY THE COURT:
As to Ms. Thompson.

MR. HOTH:
Ms. Thompson has a brother who is a drug addict and he is in jail.

BY THE COURT:
Ms. Snow.

MR. HOTH:
Ms. Snow voted not guilty in a prior distribution cocaine case, a drug case.

BY THE COURT:
Mr. Conner?

MR. HOTH:
Could we skip Mr. Conner and go to the next one?

BY THE COURT:
Sure. Ms. Craige.

MR. HOTH:
Ms. Craige also sat on that same case.  It was distribution of cocaine out of Section "A".

BY THE COURT:
Her vote was guilty?

MR. HOTH:
Not guilty.

BY THE COURT:
Mr. Wallace?

MR. HOTH:
Same case out of Section "A".

BY THE COURT:
His vote was not guilty?

MR. HOTH:
Not guilty.

BY THE COURT:
And Ms. Kirk.

MR. HOTH:
Ms. Kirk, I wasn't able to write down why I cut her.

MS. CLARK [a prosecutor]:
This was the lady when I was doing the panel who had all the questions with the constructive possession, and didn't think if my identification and everything was in my purse it would be mine.

BY THE COURT:
I do recall that. As to Ms. Dupre.

MR. HOTH:
Ms. Dupre made comments regarding running from police officers.

BY THE COURT:
As to the one person, I realize this was on the first round, Mr. Conner.

MR. HOTH:
Mr. Conner did make comment. I didn't write them down. I have to check what the reason was on Mr. Conner.

BY THE COURT:
I would deny the motion and note an objection to protect the record. Based on what you may say, if there is something going down the list. Mr. Turner, No. 4 on the list.

MR. STAPERT:
When the State asked him is there a certain amount of drugs that he needs to convict, he said that even a small amount of drugs can be detected and that their ability to detect that would not be prejudicial to the State. I would not see that as being a race neutral reason.

BY THE COURT:
Anything further as to Mr. Turner? Any other comments you wish to respond t [sic]?

MR. STAPERT:
Yes. Ms. Washington, Number 7. Mr. Hoth refers to a comment she made in another case. I have no way at this point to check that and to see whether those comments were indeed of a prejudicial nature to the State, so I believe that explanation is not acceptable. The same obviously would go towards the explanation

for number 16, Mr. Conner, the comment he had is not sufficient under <u>Batson versus Kentucky</u>.

BY THE COURT:
Anything further?

MR. STAPERT:
Just one second, Your Honor. As to Ms. Dupre, number 22, as I understand the comment was that Ms. Dupre made, she mentioned the fact that it would make her question why somebody would be running from the police. That would not be prejudicial to the State.

BY THE COURT:
Thank you.

MR. STAPERT:
Aside from the specific jurors that I have addressed, I wold [sic] maintain the objection that none of the reasons that Mr. Hoth has provided are race neutral.

BY THE COURT:
Thank you. The Court finds that based on its review of what has transpired this morning and how these attorneys have conducted themselves in previous cases, I know that's not ultimately controlling, I am not prepared to say they have violated Batson or any jurisprudence in that regard. I further note that this court is not reluctant to find, as I have in the pst [sic] with other assistant district attorneys, that there was a violation when such an objection was noted by a defense counsel, but I find based on the totality of everything I have observed with the prospective jurors answering questions and the totality of everything that the defense and the State have presented, that I would deny the request to have any of the challenges not allowed. I note the objection of the defense. Ms. Mays [the court reporter] will stay in chambers. She will not remain on the record unless there's a need to return to her services.

(Proceedings continue in chambers.)

BY THE COURT:
Let the record reflect that before we go back out in open court that the court will note that the defense was allowed to back strike two jurors who on the first round were accepted and are up in the jury room at this time. Ms. Judith Dover and Robert Barnes are now excused peremptorily by the defense. We have therefore selected this second round of eight jurors. The State has used all 12 of its peremptory

challenges.  The defense has used 11.  Twelve of these additional jurors will be sown [sic], plus one alternate.  How many will be black citizens, if you all know, if this can be done.  Let's answer this once the jurors are in the jury box.

(JURORS SOWN [sic] AND LEAVE COURTROOM)

> BY THE COURT:
> Let the record reflect that based on the objection that was previously noted with all the jurors now outside of the courtroom, this jury, according to my review visually consist of five citizens who are white, seven citizens who are black and the alternate juror is a black juror.  Is that you appreciation of the jurors composition?

> MR. STAPERT:
> Yes.

> MR. HOTH:
> Yes.[17]

In the instant case, the prosecutor tendered race-neutral explanations for the challenges; therefore, the <u>Batson</u> inquiry's first step, i.e. whether petitioner made a prima facie case of discrimination, is moot.  <u>Ladd</u>, 311 F.3d at 355.

As to step two, the state court found that the explanations tendered by the prosecutor were in fact race neutral.  As noted, the United States Supreme Court has held that the prosecutor's explanation need not be persuasive, or even plausible.  Rather, the reason offered will be deemed race neutral unless the discriminatory intent is *inherent* in the prosecutor's explanation.  <u>Purkett</u>, 514 U.S. at 768.  Clearly, the reasons proffered by the prosecutor in the instant case met that extremely low threshold.

As to the third step, petitioner, who bore the burden of persuasion, failed to show that the

---

[17]  State Rec., Vol. II of IV, transcript of April 6 & 8, 1998, pp. 4-10.

prosecutor's explanations for the peremptory challenges were fantastic or inconsistent with its treatment of similar non-minority jurors. Rather, the explanations were believable, and so the issue was one of credibility which is, of course, normally best left to the trial court.[18] Moreover, the state court's ultimate conclusion that there was no discriminatory intent is a factual finding entitled to deference under the AEDPA unless petitioner establishes by clear and convincing evidence that the finding was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Ladd, 311 F.3d at 356; 28 U.S.C. § 2254(d)(2). Petitioner has not offered any evidence, much less the requisite clear and convincing evidence, to demonstrate that the state's peremptory challenges were the result of purposeful discrimination.[19] Therefore, petitioner is not entitled to federal *habeas corpus* relief based on his Batson claim.

Evidentiary Ruling

Petitioner next claims that the heroin was wrongly admitted into evidence because the state failed to establish a proper chain of custody. The state courts rejected petitioner's claim without assigning reasons.

Challenges to the admissibility of evidence based on an improper chain of custody involve matters of state evidentiary law, and defects in the chain of custody alone normally do not rise to the level of a constitutional deprivation. See Taylor v. Maggio, 581 F. Supp. 359, 365-66 (E.D. La.),

---

[18] The fact that the trial court did not *expressly* make credibility findings in each instance is of no consequence; the law of this Circuit is that Batson requires no such express findings. See United States v. Wallace, 32 F.3d 921, 925 (5th Cir. 1994).

[19] Rather, like defense counsel before him, petitioner essentially takes the unsupported position that the proffered reasons are inherently unworthy of belief.

appeal dismissed, 727 F.2d 341 (5th Cir. 1984); see also Cedillo v. Dretke, No. Civ. A. 403CV428A, 2003 WL 22976640, at *4 (N.D. Tex. Dec. 16, 2003); Payne v. Johnson, No. Civ. A. 3:96-CV2101-G, 1998 WL 664973, at *6 (N.D. Tex. Sept. 21, 1998).  As was noted in Taylor:

> States have traditionally been afforded substantial latitude in fashioning their own rules of evidence and criminal procedure.  Therefore, questions relating to the admissibility of evidence are matters of State law and generally do not give rise to constitutional errors which are subject to redress in Federal habeas corpus proceedings.

Taylor, 581 F. Supp. at 365-66; see also Derden v. McNeel, 978 F.2d 1453, 1458 (5th Cir. 1992) ("[E]rrors of state law, including evidentiary errors, are not cognizable in habeas corpus as such.").

Rather, the United States Fifth Circuit Court of Appeals has noted:

> We will not grant habeas relief for errors in a trial court's evidentiary rulings unless those errors result in a "denial of fundamental fairness" under the Due Process Clause.  The erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction.

Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998) (citations omitted); see also Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998) ("[O]nly when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted.").

In this case, however, petitioner has failed to establish even that the evidence was wrongly admitted.  His claim is that the admission of the evidence was erroneous because a proper chain of custody was not established at trial.  However, under Louisiana law, evidence is not inadmissible simply because the chain of custody is not properly established.  The Louisiana Supreme Court has noted:

> In order to introduce demonstrative evidence, it suffices if the foundation laid

> establishes that it is more probable than not that the object is the one connected with
> the case; the lack of positive identification or a defect in the chain of custody goes
> to the weight of the evidence rather than to its admissibility.

State v. Sam, 412 So.2d 1082, 1086 (La. 1982). "The law does not require that the evidence as to

custody eliminate all possibilities that the object has been altered." State v. Hansbro, 796 So.2d 185,

198 (La. App. 2nd Cir. 2001), writ denied, 827 So.2d 1177 (La. 2002); see also State v. Dunbar, 798

So.2d 178, 181 (La. App. 4th Cir. 2001). "Ultimately, a chain of custody or connexity of the physical

evidence is a factual matter for the jury." State v. Addison, 871 So.2d 536, 551 (La. App. 5th Cir.),

writ denied, 885 So.2d 584 (La. 2004).

At petitioner's trial, Officer Kevin Stamp testified that he "hand carried" the evidence in this

case, including the heroin, "to Central Evidence and Property in the New Orleans Police Department

and placed all the items on the books as evidence."[20] Criminalist Teresia Lamb testified that she

tested that same evidence, and it tested positive for heroin.[21] Petitioner contends that it was not

established at trial how the substance was delivered to Lamb or that it was the same substance

brought by Stamp to the evidence room.

Based on the testimony of Stamp and Lamb, the evidence was properly admitted. It was then

up to defense counsel to cross-examine those witnesses regarding the chain of custody if he felt that

there was a problem regarding that issue. However, ultimately, the decision of what weight, if any,

---

[20]  State Rec., Vol. II of IV, transcript of April 6 & 8, 1998, p. 41.

[21]  State Rec., Vol. II of IV, transcript of April 6 & 8, 1998, p. 69. The prosecution and defense
stipulated that Lamb, a member of the New Orleans Police Department Crime Lab, was an expert
in the area of examining and identifying marijuana, cocaine, and heroin. Id. at p. 68.

to give to the evidence was up to the jury. The fact that the jurors obviously believed the witnesses' testimony regarding the evidence does not make the admission of the evidence, or petitioner's ultimate conviction, wrongful. For the foregoing reasons, the Court rejects petitioner's claim that he is entitled to relief based on the admission of the heroin into evidence.[22]

### Ineffective Assistance of Counsel

Petitioner contends that his trial counsel was ineffective. Again, the state courts rejected petitioner's claim without assigning reasons.

In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. See id. at 697. If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong. Id.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective

---

[22] Although petitioner's federal application is not entirely clear, he may also be arguing that the state court erred in not requiring production of a certificate of analysis complying with La.Rev.Stat.Ann. § 15:499. As an initial matter, the Court notes that any such issue would be one of state law which would not entitle petitioner to federal *habeas corpus* relief. Nevertheless, in any event, the Court notes that § 15:499 is inapplicable to this case. That statute and the accompanying provisions of Louisiana law allow a certificate of analysis to be entered into evidence in lieu of a crime lab technician's testimony. In the instant case, however, the state elected to present the live testimony of Lamb.

standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

A claim of ineffective assistance of counsel is a mixed question of law and fact. Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Therefore, this Court must defer to the state court on such claims unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Petitioner contends that the incidents leading to his arrest were videotaped by an unknown bystander. Petitioner claims that his counsel was ineffective in failing to investigate that lead, locate

the unknown person, and procure that videotape for use at trial to prove that the state's witnesses lied.

"A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." Moawad v. Johnson, 143 F.3d 942, 948 (5th Cir. 1998) (quotation marks omitted). Moreover, such a petitioner must provide factual support for his allegations as to what further investigation would have revealed. Id. Petitioner has met none of these requirements. Despite the passage of more than seven years since petitioner's conviction, he has not identified the alleged unknown person, much less procured a copy of the purported videotape or any other evidence as to what that videotape would have allegedly shown.

Petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Applying the AEDPA's deferential standard, this Court rejects petitioner's claim that his counsel was ineffective.

### Multiple Offender Adjudication

The state district court found petitioner to be a third offender based on his prior convictions in 1986 for distribution of marijuana and in 1990 for possession of cocaine. Petitioner challenges that finding on three bases. First, he contends that application of a ten-year "cleansing period" violated the *Ex Post Facto* Clause. Second, he contends that the state failed to prove the discharge dates with respect to the predicate convictions. Third, he contends that there was insufficient evidence to establish the existence and constitutional validity of the predicate convictions.

As to petitioner's first contention, he argues that applying the multiple offender law as it existed at the time of his most recent offense rather than as it existed at the time of his prior offenses constituted a prohibited *ex post facto* application of the law. Courts have exhaustively analyzed and rejected that argument because "[f]or the purposes of analyzing *ex post facto* implications of repeat offender statutes, the relevant offense is the current or latest crime, not the predicate offenses." Neal v. Kaylo, No. 01-2211, 2001 WL 1195879, at *6-8 (E.D. La. Oct. 10, 2001). For the reasons set forth in Neal, this Court likewise rejects the argument.

As to petitioner's second contention, it is based on a misunderstanding of state law. Pursuant to Louisiana law, it is not necessary for the state to prove the discharge date in multiple offender proceedings if less than the "cleansing period" has elapsed between the defendant's predicate conviction and the current offense. See id. at *8; State *ex rel.* Clark v. Marullo, 352 So.2d 223, 230 (La. 1977); see also State v. Bass, 767 So.2d 772, 781 (La. App. 4th Cir. 2000); State v. Tucker, 682 So.2d 261, 266 (La. App. 4th Cir. 1996). In the instant case, less than the applicable ten-year "cleansing period" elapsed between the 1990 conviction and the 1998 current offense.[23] Therefore, no proof regarding the discharge date was required.

---

[23] The Court further notes that petitioner's argument regarding the calculation of the "cleansing period" is premised on a misunderstanding of state law. Petitioner essentially argues that the "cleansing period" requirement must be met as to all prior convictions used to enhance his current sentence. The Louisiana Supreme Court expressly rejected that contention in State v. Everett, 816 So.2d 1272 (La. 2002), holding that the ten-year period applies only when determining if there is less than ten years between discharge on the immediately preceding conviction and the commission of the current offense. If that requirement is met, then all other prior convictions may be used to enhance the current sentence regardless of when the defendant was discharged on those other convictions.

Petitioner's third contention regarding the sufficiency of the evidence is likewise meritless. In the multiple offender proceedings, petitioner conceded the existence of the two prior convictions and that those convictions related to him.[24] However, petitioner argues that the state failed to prove that he was properly advised of his rights as required by Boykin v. Alabama, 395 U.S. 238 (1969). That claim is barred by Lackawanna County District Attorney v. Cross, 532 U.S. 394 (2001). In Lackawanna, the United States Supreme Court stated:

> [W]e hold that once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid. If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.

Id. at 403-04 (citation omitted).[25]

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that petitioner's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and

---

[24] State Rec., Vol. II of IV, transcript of October 1, 1998, p. 2; see also State Rec., Vol. I of IV, minute entry dated August 25, 1998.

[25] The Supreme Court noted that the Lackawanna prohibition would not apply where it is argued that the predicate conviction was unconstitutional because it was obtained where there was a failure to appoint counsel in violation of Gideon v. Wainwright, 372 U.S. 335 (1963). Lackawanna, 532 U.S. at 404. That limited exception is inapplicable in this case. The evidence presented at the multiple offender hearing showed that plaintiff was represented by attorney Robert Brawick in the 1986 case and by attorney Floyd M. Gibson in the 1990 case. State Rec., Vol. I of IV.

recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this twenty-sixth day of May, 2005.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

- 22 -